IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT FRANKFORT

Eastern District of Kentucky
FILED
JUL 1 8 2003
AT FRANKFORT
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

|  |  |
|---|---|
| KENTUCKY POWER COMPANY<br>D/B/A AMERICAN ELECTRIC<br>POWER<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN J. HUELSMANN, in his official<br>capacity as Chairman of the Kentucky<br>Public Service Commission; GARY W.<br>GILLIS, in his official capacity as Vice<br>Chairman of the Kentucky Public Service<br>Commission; ROBERT E. SPURLIN,<br>in his official capacity as a Commissioner<br>of the Kentucky Public Service Commission,<br>KENTUCKY INDUSTRIAL UTILITY<br>CUSTOMERS, INC. and ALBERT B.<br>CHANDLER, III, in his official capacity<br>as Attorney General of the Commonwealth of<br>Kentucky, by and through his Office<br>of Rate Intervention; PUBLIC SERVICE<br>COMMISSION OF KENTUCKY<br><br>    Defendants. | Civil Action No. 03-47 JMH |

## COMPLAINT

### Introduction

1.    Plaintiff Kentucky Power Company d/b/a American Electric Power ("Kentucky Power") brings this action seeking a declaration that KRS 278.214 is void as unconstitutional and further seeking declaratory and injunctive relief from decisions of

the Commissioners of the Public Service Commission of Kentucky ("KPSC") that are contrary to, and preempted by, federal law.

2. In the decisions at issue, the KPSC ordered Kentucky Power to file pursuant to KRS 278.214 a tariff that is contrary to federal law. Specifically, KRS 278.214 and the KPSC's orders are facially invalid under the Commerce Clause of the Constitution of the United States, Article I, Section 8, clause 3, because they discriminate in favor of citizens of Kentucky against citizens of other states; and are preempted by the Federal Energy Regulatory Commission's ("FERC") exclusive jurisdiction over transmission of electricity in interstate commerce.

**Parties, Jurisdiction, and Venue**

3. Plaintiff Kentucky Power is a Kentucky corporation with its principal place of business in Kentucky. Kentucky Power provides electric service in portions of 20 counties in eastern Kentucky. Kentucky Power is one of eleven wholly owned operating companies of American Electric Power Company ("AEP.") AEP is an integrated multi-state utility system registered under the Public Utility Holding Company Act of 1935 ("PUCHA"), 15 U.S.C. 79, *et seq.* The AEP companies provide electric service at wholesale and retail to more than five million customers in parts of eleven states. As required by PUCHA, the AEP system is operated as a single integrated utility system.

4. Defendant Martin J. Huelsmann is Chairman of the KPSC and performs his official duties in Frankfort, Kentucky. Chairman Huelsmann is sued in his official capacity for declaratory and injunctive relief only.

5.  Defendant Gary W. Gillis is Vice Chairman of the KPSC and performs his official duties in Frankfort, Kentucky. Vice Chairman Gillis is sued in his official capacity for declaratory and injunctive relief only.

6.  Defendant Robert E. Spurlin is Commissioner of the KPSC and performs his official duties in Frankfort, Kentucky. Commissioner Spurlin is sued in his official capacity for declaratory and injunctive relief only.

7.  Defendant Kentucky Industrial Utility Customers, Inc. is a Kentucky corporation. It participated in the proceedings before the KPSC that are the subject of this action. Kentucky Industrial Utility Customers, Inc. is sued for injunctive and declaratory relief only.

8.  Defendant, Albert B. Chandler, III is the Attorney General of the Commonwealth of Kentucky and performs his official duties in Frankfort, Kentucky. Attorney General Chandler, by and through his Office of Rate Intervention, participated in the proceedings before the KPSC that are the subject of this action. Attorney General Chandler is sued in his official capacity for injunctive and declaratory relief only.

9.  Defendant KPSC is an agency of the Commonwealth of Kentucky with the capacity under state law to sue and be sued in its own name.

10. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331. Although Kentucky Power believes that its claims arise under federal law, to the extent that state law is implicated, this Court has supplemental jurisdiction under 28 U.S.C. § 1367. The Court also has subject matter jurisdiction over the action pursuant to the Commerce and Supremacy Clauses of the U.S. Constitution and 28 U.S.C. § 1343(a)(3).

11. Venue is proper in this district under 28 U.S.C. § 1391. Venue is proper under section 1391(b)(1) because the Commission resides in this District. Venue is proper under section 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District, in which the KPSC sits. This action is properly assigned to this division pursuant to LR 3.2(2)(A) because at least one defendant resides in this division and a substantial part of the events giving rise to the claim occurred in this division.

### Kentucky Power and the AEP System

12. AEP, through its operating companies owns, and through its subsidiary American Electric Power Service Corporation ("AEPSC") operates, an extensive interstate transmission system, a portion of which is in the Commonwealth of Kentucky. This interstate transmission system is used to provide electric service to AEP's "native load" customers. Native load customers are retail electric customers and other customers whom the AEP operating companies have an obligation to serve, including customers served by Kentucky Power within its certified territory in the Commonwealth of Kentucky. The AEP system is operated as a single system.

13. AEP also uses its transmission system to provide service to third parties. Such transmission service is provided pursuant to an Open Access Transmission Tariff ("OATT") in a form specified by FERC in its Order 888.[1] Under controlling FERC

---

[1] Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities and Recovery of Stranded Costs by Public Utilities and Transmitting Utilities, Order No. 888, 61 Fed. Reg. 21,540 (May 10, 1996), FERC Stats. and Regs. ¶ 31,036 (1996) *order on reh'g* Order No. 888-A, 62 Fed. Reg. 12,274 (March 14, 1997) FERC Stats. and Regs. ¶ 31,048 (1997), *order on reh'g*, Order No. 888-B, 81 FERC ¶ 61,248 (1997), *order on reh'g.*, Order No. 888-C, 82 FERC ¶61,046 (1998), *aff'd in relevant part sub nom.* Transmission Access Policy Study Group v. FERC, 225 F.3d 667 (D.C. Cir. 2000), *aff'd sub nom.* New York v. FERC, 222 S.Ct. 1212 (2002).

4

precedent, AEP must provide open access transmission service across its entire system, including Kentucky, without regard to state or operating company boundaries. AEP's OATT requires the pro-rata curtailment of third-party transmission users (long-term, firm point-to-point customers and network service customers) and native load customers should curtailment become necessary.

14. The AEP transmission system, including that portion of the system owned by Kentucky Power and lying within the boundaries of the Commonwealth of Kentucky, is used in the interstate transmission of electricity

**Reliability Procedures**

15. To help ensure the reliability of the highly interconnected bulk electric transmission system in the United States, electric utility companies are organized into regional reliability councils, which in turn are under the overall direction of the North American Electric Reliability Council ("NERC.") Kentucky Power and the other AEP operating companies in the Eastern part of the AEP system are in the East Central Area Reliability Council ("ECAR.")

16. To assist in maintaining the reliability of bulk electric transmission system in the United States, Reliability Coordinators, responsible to NERC, monitor the interconnected power grid. In addition, Reliability Coordinators are authorized to direct electric utilities to take actions to maintain the reliability of the bulk electric transmission system. Such reliability measures are necessary to prevent failures in one part of the interconnected power system from affecting other parts of the grid and resulting in "cascading outages." Cascading outages are widespread catastrophic failures across large areas of the interconnected system and may cross state boundaries.

17. Among the actions the Reliability Coordinator may require is transmission loading relief ("TLR.") Such procedures are intended to reduce loading on individual transmission system elements, and include curtailing power transactions using the transmission grid. The TLR procedures also specify the order in which transactions are to be curtailed.

18. The TLR procedures applicable to the Eastern United States, including Kentucky Power and the other AEP operating companies in the Eastern part of the AEP system, are set forth in NERC Policy 9. Pursuant to FERC Order 888, AEP has incorporated NERC Policy 9 in its OATT filed with and approved by FERC. A copy of the TLR procedure for the Eastern part of the United States as set forth in NERC Policy 9 and filed as part of AEP's OATT is attached as Exhibit 1.

19. FERC has determined that favoring native load customers in any power curtailment scheme constitutes undue discrimination in violation of the Federal Power Act, 16 U.S.C. 792, *et seq*.

### KRS 278.214

20. The 2002 General Assembly of Kentucky enacted, and Governor Paul Patton signed, SB 257. Section 12 of SB 257, codified at KRS 278.214, provides:

> When a utility or generation and transmission cooperative engaged in the transmission of electricity experiences on its transmission facilities an emergency or other event that necessitate a curtailment or interruption of service, the utility or generation and transmission cooperative shall not curtail or interrupt retail electric service within its certified territory, or curtail or interrupt wholesale electric service furnished to a member distribution cooperative for retail electric service within the cooperative's certified territory, except for customers who have agreed to receive interruptable [sic] service, until after service has been interrupted to all other

customers whose interruption may relieve the emergency or other event.

## The Proceedings Before The Commission

21. In response to KRS 278.214, Kentucky Power on August 30, 2002, modified its existing Capacity and Energy Control Program by filing revisions to its Mandatory Curtailment tariff, paragraph 14 of Sheet 3-4 of its tariffs on file with the KPSC. The paragraph provided:

> In implementing any load curtailment, AEP will comply with Section 12 of SB 257 (2002 Session) to the extent possible under federal law and regulation and applicable reliability council requirements.

22. By Order dated September 27, 2002, the KPSC suspended Kentucky Power's Mandatory Curtailment tariff filing and initiated Case No. 2002-00349, *In the Matter of: An Investigation of the Tariff Filing of Kentucky Power Company to Implement KRS 278.214*. In its Order, the KPSC indicated that because the Mandatory Curtailment tariff qualified Kentucky Power's undertaking "to the extent possible under federal law and applicable reliability council requirements," the tariff was in violation of KRS 278.214. Similar proceedings were initiated in separate dockets with respect to tariffs filed by Louisville Gas and Electric Company, Kentucky Utilities Company and Union, Light Heat and Power Company.

23. In Case No. 2002-00349, Kentucky Power filed the testimony of J. Craig Baker, Senior Vice President-Regulation and Public Policy, American Electric Power Service Corporation. Through Mr. Baker's testimony and a subsequently filed brief, Kentucky Power contended that unless interpreted to permit the filing of the Mandatory Curtailment tariff with its qualifying language, KRS 278.214 is facially invalid under the

Commerce Clause of the Constitution of the United States, Article I, Section 8, clause 3, because it unlawfully discriminates in favor of Kentucky citizens located within its certified territory against citizens of other states and because it is preempted under the Supremacy of the United States Constitution by FERC's exclusive jurisdiction over the transmission of electricity in interstate commerce.

24. On May 28, 2003 the KPSC issued an Order rejecting Kentucky Power's Mandatory Curtailment tariff as contrary to KRS 278.214. A copy of the Order is attached hereto as Exhibit 2. In its May 28, 2003 Order, the KPSC concluded that KRS 278.214 was not preempted and that it was without jurisdiction to declare a statute unconstitutional. The May 28, 2003 Order also directed Kentucky Power to file a Mandatory Curtailment tariff without qualifying language on or before June 17, 2003.

25. Kentucky Power sought rehearing of the KPSC's Order on June 17, 2003. In its Petition for Rehearing, Kentucky Power also requested a stay of the requirement in the KPSC's May 28, 2003 Order that it file its Mandatory Curtailment tariff without the qualifying language.

26. On July 3, 2003, the KPSC entered its Order denying rehearing and the stay, and ordered Kentucky Power to comply with the KPSC's May 28, 2003 Order on or before July 18, 2003. A copy of the Order is attached hereto as Exhibit 3.

27. On July 18, 2003, Kentucky Power intends to file under protest, and without waiving its rights to challenge the KPSC's Orders, a Mandatory Curtailment tariff without qualifying language. A copy of the tariff is attached hereto as Exhibit 4.

## Claims

### Count 1 – Commerce Clause

28. Kentucky Power restates and realleges it allegations set forth hereinabove.

29. KRS 278.214, on its face and as interpreted by the KPSC in its May 28, 2003 and July 3, 2003 Orders, requires priority be given to customers located in Kentucky Power's certified territory within the Commonwealth of Kentucky in the event of a curtailment of electric transmission service. KRS 278.214, on its face and as interpreted by the KPSC in its May 28, 2003 and July 3, 2003 Orders, seeks to regulate interstate commerce, and unreasonably and unjustifiably discriminates against citizens of other states in favor of citizens of Kentucky by protecting Kentucky firm native load customers to the detriment of customers in other states.

30. KRS 278.214, on its face and as interpreted by the KPSC in its May 28, 2003 and July 3, 2003 Orders, is contrary to and violates the Commerce Clause of the United States Constitution, Article I, Section 8, clause 3, and as such is void and unenforceable.

### Count 2 – Preemption

31. Kentucky Power restates and realleges it allegations set forth hereinabove.

32. FERC has jurisdiction over "the transmission of electricity in interstate commerce." 16 U.S.C. 824(b)(1).

33. Pursuant to this authority, FERC promulgated Order 888, which requires, *inter alia*, pro rata curtailment of long-term, firm, point-to-point customers, network

service customers and native load customers. AEPSC's OATT, as filed with and approved by FERC, provides for such pro-rata curtailment.

34. The requirement under KRS 278.214, on its face and as interpreted by the KPSC in its May 28, 2003 and July 3, 2003 Orders, that wholesale and retail customers of Kentucky Power located within Kentucky Power's certified territory be curtailed last in the event of a curtailment conflicts with the requirement of pro-rata curtailment under federal law and regulation. In addition, the preference afforded customers located within Kentucky Power's certified territory by KRS 278.214, both on its face and as interpreted by the KPSC in its May 28, 2003 and July 3, 2003 Orders, conflicts with the TLR procedures and other Reliability Council requirements incorporated in AEPSC's FERC approved OATT.

35. KRS 278.214, on its face and as interpreted by the KPSC in its May 28, 2003 and July 3, 2003 Orders, is void and unenforceable under the Supremacy Clause of the Constitution of the United States, Article VI, clause 2.

Wherefore, Kentucky Power Company d/b/a American Electric Power Company respectfully requests judgment:

1. Declaring KRS 278.214 void as unconstitutional and further declaring that the KPSC's decisions regarding the matters raised herein are unlawful.

2. Enjoining all the Defendants, and all parties acting in concert therewith, from seeking to enforce the unlawful decisions against Kentucky Power Company d/b/a American Electric Power Company.

3. Granting Kentucky Power Company d/b/a American Electric Power Company such further relief as the Court may deem just and reasonable.

Respectfully submitted,

*[signature]*

Mark R. Overstreet
STITES & HARBISON PLLC
421 West Main Street
P.O. Box 634
Frankfort, Kentucky 40602-0634
Telephone: (502) 223-3477

Kevin F. Duffy
American Electric Power Service Corporation
1 Riverside Plaza
Post Office Box 16631
Columbus, OH 43216
Telephone: (614) 716-1617

COUNSEL FOR KENTUCKY POWER
COMPANY D/B/A AMERICAN ELECTRIC
POWER

KE057:KE160:9541:4:FRANKFORT