UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION
CIVIL ACTION NO. 03-47-JMH

Eastern District of Kentucky
FILED
MAR 25 2004
AT FRANKFORT
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

| | |
|---|---|
| KENTUCKY POWER COMPANY D/B/A<br>AMERICAN ELECTRIC POWER | PLAINTIFF |
| v. | |
| MARTIN J. HUELSMANN, *et al.* | DEFENDANTS |
| - and - | |
| LOUISVILLE GAS AND ELECTRIC COMPANY and<br>KENTUCKY UTILITIES COMPANY | PLAINTIFFS |
| v. | |
| MARTIN J. HUELSMANN, GARY W. GILLIS, and<br>ROBERT E. SPURLIN, in their official capacities as<br>Commissioners of the Kentucky Public Service Commission;<br><br>the FEDERAL ENERGY REGULATORY COMMISSION;<br>and<br><br>MIDWEST INDEPENDENT TRANSMISSION SYSTEM<br>OPERATOR, INC. | DEFENDANTS |

**FIRST AMENDED COMPLAINT**

Louisville Gas and Electric Company and Kentucky Utilities Company (collectively, the "Plaintiffs"), for their Complaint for Declaratory and Injunctive Relief against Martin J. Huelsmann, Gary W. Gillis, and Robert E. Spurlin, in their official capacities as Commissioners of the Kentucky Public Service Commission (collectively the "PSC Defendants"); the Federal Energy Regulatory Commission; and the Midwest Independent Service Operator, state as follows:

1

## NATURE OF THE CONTROVERSY

1.  This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to determine the constitutionality of KRS 278.214, a Kentucky statute that discriminates in favor of Kentucky retail electricity customers in the event of a curtailment of electricity transmission services by a regulated utility.

2.  There are two constitutional questions presented for decision: first, whether, under the Supremacy Clause of the United States Constitution, KRS 278.214 is preempted by an order of the Federal Energy Regulatory Commission which provides for the pro-rata curtailment of electricity service to both in-state retail and out-of-state wholesale customers on an equal basis; and second, whether, under the Commerce Clause of the United States Constitution, KRS 278.214 unconstitutionally discriminates against interstate commerce.

## PARTIES

3.  Plaintiff Louisville Gas and Electric Company ("LG&E") is a Kentucky corporation with its principal office in Louisville, Kentucky. LG&E is an electricity and gas utility serving customers in Louisville and sixteen surrounding counties. LG&E is subject to the regulatory authority of the Kentucky Public Service Commission.

4.  Plaintiff Kentucky Utilities Company ("KU") is a Kentucky corporation with its principal office in Lexington, Kentucky. KU is an electricity utility serving customers in 77 Kentucky counties and five counties in Virginia. KU is subject to the regulatory authority of the Kentucky Public Service Commission.

5.  LG&E and KU are wholly-owned subsidiaries of LG&E Energy Corp., a Kentucky corporation with its principal place of business in Louisville, Kentucky.

6. The PSC Defendants, Martin J. Huelsmann, Gary W. Gillis, and Robert E. Spurlin, are the duly appointed Commissioners of the Kentucky Public Service Commission (the "PSC"). In that capacity, the PSC Defendants exercise the PSC's power and authority to regulate utilities, including the Plaintiffs, and enforce the provisions of KRS Chapter 278, including KRS 278.214.

7. Defendant Federal Energy Regulatory Commission ("FERC"), is an agency of the United States Government. Pursuant to the Federal Power Act, 16 U.S.C. §§ 791 *et seq.*, FERC exercises the power and authority to regulate utilities, including the Plaintiffs, which transmit electric energy in interstate commerce or engage in interstate sales of electric energy at wholesale.

8. Defendant Midwest Independent Transmission System Operator, Inc. ("MISO") is a non-stock, not-for-profit corporation, organized and existing under the laws of Delaware, with its principal place of business in Indiana. MISO is a regional entity that manages and operates the transmission systems of multiple transmission system owners in the midwest region.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1331, because this civil action raises federal questions concerning federal constitutionality of a state statute under the Constitution and laws of the United States.

10. Venue is proper in the Eastern District of Kentucky pursuant to 28 U.S.C. §1391(a) because a substantial part of the events giving rise to this action occurred in this District.

## THE CONTROVERSY

### FERC orders tariffs to include non-discriminatory curtailment provisions

11. On April 24, 1996, the Federal Energy Regulatory Commission promulgated Order No. 888 requiring all public utilities that own, control or operate facilities used for transmitting electric energy in interstate commerce to have on file open access non-discriminatory transmission tariffs that contain minimum terms and conditions of non-discriminatory service. The stated purpose of Order No. 888 was to encourage competition in the wholesale bulk power market and to bring more efficient, lower cost power to the nation's electricity consumers. Order No. 888 became final and effective on July 9, 1996.

12. Appendix D to Order No. 888 sets forth a pro forma Open Access Transmission Tariff ("OATT"). Paragraph 13.6 of the OATT sets forth the requirements utilities must follow in reducing transmission service in response to a transmission capacity shortfall resulting from system reliability conditions. Paragraph 13.6 reads in pertinent part as follows:

> Curtailment of Firm Transmission Service: In the event that a Curtailment on the Transmission Provider's Transmission System, or a portion thereof, is required to maintain reliable operation of such system, Curtailments will be made on a non-discriminatory basis to the transaction(s) that effectively relieve the constraint. If multiple transactions require Curtailment, to the extent practicable and consistent with Good Utility Practice, Curtailments will be proportionally allocated among the Transmission Provider's Native Load Customers, Network Customers, and Transmission Customers taking Firm Point-To-Point Transmission Service. All Curtailments will be made on a non-discriminatory basis, however, Non-Firm Point-To- Point Transmission Service shall be subordinate to Firm Transmission Service.
>
> * * * * *
> (emphasis added)

13. On March 4, 1997, FERC issued Order No. 888-A. The pro forma OATT enacted with Order No. 888-A contained the same requirement that service be curtailed on a pro-rata basis as to native-load and other types of customers.

### The Plaintiffs become subject to the requirements of the Midwest Independent System Operator Open Access Tariff

14. In 1998, the Plaintiffs joined MISO, a regional entity that manages and operates the transmission systems of multiple transmission system owners in the midwest region. MISO was established to provide non-discriminatory access to a large regional transmission system. MISO has functional control over the transmission lines owned by the participating transmission-owning utilities and independently schedules transmission and required ancillary services.

15. The formation of entities such as MISO was encouraged by FERC Order No. 888. Accordingly, FERC approved the application of LG&E, KU, and seven other public utilities, pursuant to Section 203 of the Federal Power Act, to transfer operational control of their jurisdictional facilities to MISO.

16. FERC subsequently approved MISO's Open Access Transmission Tariff (the "MISO OATT"), which was modeled on the Order No. 888 pro forma tariff. Paragraph 13.6 of the MISO OATT mirrors the corresponding curtailment provision in the pro forma tariff:

> Curtailment of Firm Transmission Service: In the event that a Curtailment on the Transmission Provider's Transmission System, or a portion thereof, is required to maintain reliable operation of such system, Curtailments will be made on a non-discriminatory basis to the transaction(s) that effectively relieve the constraint. . . . If multiple transactions require Curtailment, to the extent practicable and consistent with Good Utility Practice, Curtailments will be proportionally allocated among the Transmission Provider's Native Load Customers, Network Customers, and Transmission Customers taking Firm Point-To-Point Transmission Service. All Curtailments will be made

5

on a non-discriminatory basis, however, Non-Firm Point-To-Point Transmission Service shall be subordinate to Firm Transmission Service.

* * * * *

17. The MISO OATT imposes penalties on transmission customers who fail to cease or reduce service in response to a directive by the transmission provider. These penalties include $10 per kilowatt hour for the failure to curtail service within ten minutes of a directive, and $20 per kilowatt hour for the failure to curtail service within twenty minutes of such directive.

### The PSC orders compliance with KRS 278.214, a new statute providing a preference to Kentucky customers in the event of curtailment.

18. During the 2002 Legislative Session, the General Assembly passed S.B. 257, which was signed into law by the Governor on April 24, 2002, and codified as KRS 278.214. KRS 278.214, which establishes a preference for Kentucky retail electricity customers in the event of a curtailment of services, provides:

> When a utility or generation and transmission cooperative engaged in the transmission of electricity experiences on its transmission facilities an emergency or other event that necessitates a curtailment or interruption of service, the utility or generation and transmission cooperative shall not curtail or interrupt retail electric service within its certified territory, or curtail or interrupt wholesale electric energy furnished to a member distribution cooperative for retail electric service within the cooperative's certified territory, except for customers who have agreed to receive interruptable service, until after service has been interrupted to all other customers whose interruption may relieve the emergency or other event. (emphasis added)

19. On June 24, 2002, the PSC directed the Plaintiffs (and other electric utilities within its jurisdiction) to file tariffs to implement the new requirements of KRS 278.214.

20. On August 29, 2002, the Plaintiffs responded by filing new tariffs, designated as Original Sheet No. 37-A and Original Sheet No. 31.3. These tariffs

conformed to the requirements of KRS 278.214 to the extent permitted by the MISO OATT and Order No. 888. The tariffs stated:

> In accordance with the provisions of Senate Bill 257 specifying changes to KAR 278.010 to 278.450, when the Company experiences on its transmission facilities an emergency or other event that necessitates a curtailment or interruption of service, the Company shall not curtail or interrupt retail electric service within its certified territory except for customers who have agreed to receive interruptible service, until service has been interrupted to all other customers whose interruptions may relieve the emergency or other event.
>
> Notwithstanding the foregoing, this provision shall apply only to the extent that it (i) does not conflict with the Emergency Plan set forth on [Sheet Nos. 32 through 37 of LG&E Tariff PSC of Ky. Electric No. 5 and Sheet Nos. 31 through 31.2 of KU Tariff PSC of Ky. No. 12]; and (ii) does not conflict with or otherwise prevent the Company from complying with applicable federal law, including rules or regulations issued by federal governmental authorities having jurisdiction over the Company.

21. The PSC suspended the new tariffs filed by the Plaintiffs to permit time for an investigation into whether the tariffs complied with KRS 278.214. The PSC further ordered the Plaintiffs to provide information concerning whether the transmission priority requirements set forth in KRS 278.214 could not be applied due to a conflict with federal law, rules, or regulations.

22. On October 21, 2002, the Plaintiffs responded to the PSC's request for information by indicating that KRS 278.214 conflicted with the FERC-approved MISO OATT and, therefore, was preempted by federal law under the Supremacy Clause of the United States Constitution. On March 14, 2003, in response to a order from the PSC consolidating several cases for briefing purposes, the Plaintiffs further briefed the federal preemption issue.

23. On May 28, 2003, the PSC issued an order finding (1) that the Plaintiffs' tariffs were not in compliance with KRS 278.214; (2) that KRS 278.214 was not preempted

by federal law; (3) that KRS 278.214 did not violate the federal Commerce Clause; and (4) that, in any case, the PSC lacked the authority to declare a Kentucky statute unconstitutional. The PSC further ordered the Plaintiffs to file new tariffs conforming to the requirements of KRS 278.214.

24. On July 3, 2003, the PSC denied the Plaintiffs' requests for rehearing and a stay of the May 28, 2003 Order. On July 18, 2003, the Plaintiffs filed under protest tariffs that conform to KRS 278.214 in the manner specified by the PSC. These tariffs directly conflict with the requirements of the FERC-approved MISO OATT and could require the Plaintiffs to violate federal law in the event of a curtailment.

25. There is an actual controversy between the parties, because the PSC has ordered the Plaintiffs to file a tariff that conforms to KRS 278.214, without qualification, thereby announcing its intent to enforce the statute.

## FIRST CLAIM FOR RELIEF
### Federal Preemption under the Supremacy Clause

26. The Plaintiffs restate and incorporate herein by reference the allegations in paragraphs 1-25 of the Complaint.

27. Pursuant to Article VI, Cl. 2 of the United States Constitution, the Constitution and laws of the United States are supreme to state law. Under the Supremacy Clause, a valid federal law preempts conflicting state law.

28. Order No. 888 was validly promulgated by FERC pursuant to its authority under the Federal Power Act. The MISO OATT is a filed tariff that has been approved by FERC as conforming to federal law.

29. There is an actual conflict between Paragraph 13.6 of the MISO OATT and KRS 278.214, because the MISO OATT requires pro-rata curtailment of transmission

8

services to electric utility customers to relieve a constraint, and KRS 278.214 requires that transmission service to Kentucky customers only be curtailed after all other customers have been curtailed. Under foreseeable circumstances, Plaintiffs' compliance with both provisions would be physically impossible. KRS 278.214 is therefore preempted by federal law under the Supremacy Clause of the United States Constitution.

30. The Plaintiffs are entitled to a declaration of rights that KRS 278.214 is unconstitutional and that the PSC Defendants' order that the Plaintiffs must file tariffs conforming with KRS 278.214 is null, void, and unenforceable. Plaintiffs are also entitled to a declaration of rights defining their obligation to comply with the curtailment provisions of the MISO OATT and applicable FERC regulations.

## SECOND CLAIM FOR RELIEF
### Violation of the Commerce Clause

31. The Plaintiffs restate and incorporate herein by reference the allegations in paragraphs 1-30 of the Complaint.

32. Pursuant to Article I, Section 8, Cl. 3 of the United States Constitution, Congress has the exclusive authority to regulate interstate commerce and a state may not regulate in a manner that discriminates against non-citizens of the state.

33. KRS 278.214 violates the Commerce Clause by discriminating in favor of Kentucky citizens and against citizens of other states, with respect to the curtailment of transmission service to customers of electric utilities.

34. The Plaintiffs are entitled to a declaration of rights that KRS 278.214 is unconstitutional and that the PSC Defendants' order that the Plaintiffs must file tariffs conforming with KRS 278.214 is null, void, and unenforceable.

## THIRD CLAIM FOR RELIEF

### Injunctive relief

35. The Plaintiffs restate and incorporate herein by reference the allegations in paragraphs 1-34 of the Complaint.

36. The Plaintiffs are entitled to an injunction prohibiting the PSC Defendants from enforcing KRS 278.214 and requiring the PSC Defendants to accept for filing tariffs that fully comply with the provisions of the MISO OATT.

### PRAYER FOR RELIEF

Wherefore, the Plaintiffs Louisville Gas and Electric Company and Kentucky Utilities Company respectfully request the following relief:

a) A declaration of rights stating that KRS 278.214 is unconstitutional on its face, and as applied to the Plaintiffs, and defining Plaintiffs' obligation to comply with the curtailment provisions of the MISO OATT and applicable FERC regulations;

b) An injunction prohibiting the PSC Defendants from enforcing KRS 278.214 and requiring the PSC Defendants to accept filing of tariffs that comply with the MISO OATT on file with FERC;

c) Reasonable costs;

d) All other relief to which the Plaintiffs may be entitled.

Respectfully submitted,

*[signature]*

Sheryl G. Snyder
David S. Kaplan
FROST BROWN TODD LLC
400 W. Market Street, 32nd Floor
Louisville, KY 40202-3363
(502) 589-5400 – phone
(502) 589-1087 – facsimile

*Attorneys for Plaintiffs, Louisville Gas
and Electric and Kentucky Utilities Company*

OF COUNSEL:
Dorothy E. O'Brien
Deputy General Counsel
LG&E Energy Corp.
220 West Main St., 11th Floor
Louisville, Kentucky 40202
(502) 627-3450

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing First Amended Complaint was this  24th  day of March, 2004, served by U.S. Mail, first class mail, postage prepaid, upon:

Dennis G. Howard, II
Elizabeth E. Blackford
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601-8204

Richard G. Raff
Deborah T. Eversole
Kentucky Public Service Commission
211 Sower Boulevard, P.O. Box 615
Frankfort, KY 40602-0615

Mark R. Overstreet
Stites & Harbison
421 W. Main St.
P.O. Box 634
Frankfort, KY 40602-0634

David F. Boehm
Kurt J. Boehm
Boehm, Kurtz & Lowry
36 E. Seventh St., Suite 2110
Cincinnati, OH 45202

*Counsel for Plaintiffs, Louisville Gas and Electric and Kentucky Utilities Company*

LOULibrary/338670.1