IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT FRANKFORT

Eastern District of Kentucky
FILED

SEP 1 0 2004

AT FRANKFORT
LESLIE G WHITMER
CLERK U S DISTRICT COURT

| | |
|---|---|
| KENTUCKY POWER COMPANY <br> D/B/A AMERICAN ELECTRIC POWER <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. HUELSMANN, in his official <br> capacity as Chairman of the Kentucky <br> Public Service Commission, et al. <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. 03-47-JMH
(Consolidated with Civil
Action No. 03-49-JMH)

## TABLE OF POINTS AND AUTHORITIES

Page

Introduction ........................................................................................................... 1

**Statement of the Case** ..................................................................................... 1-7

    A.    Kentucky Power Is Part Of A Single, Physically Integrated And
            Centrally Dispatched System ...................................................... 1-4

    B.    Electric System Reliability ............................................................. 4-6

    C.    KRS 278.214 And Proceedings Before the Public Service
            Commission of Kentucky ............................................................. 6-7

**Argument** ........................................................................................................ 8-15

    A.    KRS 278.214 Facially, Purposefully and Practically Discriminates
            Against Interstate Commerce And Thus Violates The Dormant
            Commerce Clause .................................................................... 8-15

          1.    Facial Discrimination ..................................................... 10-11

          2.    Purposeful Discrimination ............................................. 11-12

          3.    Practical Discrimination ................................................. 12-15

    B.    Because It Conflicts With Both FERC Order 888 and American
            Electric Power's FERC Pro-Forma OATT, KRS 278.214 Is
            Preempted Under the Supremacy Clause of the United States
            Constitution .................................................................................. 15

**Conclusion** ........................................................................................................ 16

**Cases**

*Association of Public Agency Customers v. Bonneville Power Administration*,
126 F.3d 1158 (9th Cir. 1997) .................................................................. 8

*City of Philadelphia v. New Jersey*,
437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) .............................. 11

*Cotto Waxo Company v. Williams*,
46 F.3d 790 (8th Cir. 1995) .................................................................... 13

*Eastern Kentucky Resources v. Fiscal Court of Magoffin County, Kentucky*,
127 F.3d 532 (6th Cir. 1997) ..................................................................... 9

*Healy v. Beer Institute*,
491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989) .................... 12, 13

National Collegiate Athletic Association v. Miller,
10 F.3d 633 (9th Cir. 1993) ................................................................ 12, 14

*New England Power Company v. New Hampshire*,
455 U.S. 331, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982) ...................... 11, 12

*New York v. F.E.R.C.*, 535 U.S. 1, 122 S.Ct. 1012, 152 L.Ed.2d 47 (2002)... 8, 10

*Ohio Power Company v. Federal Energy Regulatory Commission*,
668 F.2d 880 (6th Cir. 1982) ..................................................................... 3

*Oregon Waste Systems, Inc. v. Department of Environmental Quality*,
511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994) ............................... 9

*South-Central Timber Development, Inc. v. Wunnicke*,
467 U.S. 82, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984) ................................. 9

*Wyoming v. Oklahoma*,
502 U.S. 437, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992) ................................. 9

**Statutes**

KRS 278.016 ................................................................................................ 10

KRS 278.214 ............................................................................................ passim

**Other Authorities**

FERC Order 888 ...................................................................................... passim

Public Utility Holding Company Act of 1935, 15 U.S.C. § 15, et seq .................... 2

**Regulations**

2002 Kentucky Acts, Chapter 365, § 12 ............................................................. 6

<u>Memorandum in Support of Kentucky Power Company's</u>
<u>Motion for Summary Judgment</u>

Kentucky Power Company ("Kentucky Power") in support of its Motion for

Summary Judgment declaring KRS 278.214 void as violative of the Commerce

and Supremacy Clauses of the United States Constitution states:

*May it please the Court:*

## Introduction

Enacted by the 2002 Session of the Kentucky General Assembly, KRS

278.214 mandates that Kentucky retail customers be given priority over all other

customers, including customers located in other states, with respect to

curtailments on Kentucky Power's interstate transmission system. The statute is

contrary to Kentucky Power's federal tariffs and the applicable Orders of the

Federal Energy Regulatory Commission ("FERC"), grants Kentucky residents

preferred access to the AEP's interstate transmission system and could threaten

the very reliability of the electric power grid it purports to reserve for Kentucky

residents.

## **Statement of the Case[1]**

### A.    Kentucky Power Is Part Of A Single, Physically Integrated And Centrally Dispatched System.

Kentucky Power is a wholly-owned subsidiary of American Electric Power

Company, Inc. ("AEP") and provides electric service to approximately 175,000

customers in 20 Eastern Kentucky counties. Affidavit of J. Craig Baker at ¶ 10

("Baker Affidavit.") In addition, Kentucky Power provides wholesale service to

---

[1] Kentucky Power believes, and the record to date supports, that there is no genuine issue as to any of these facts.

the Cities of Vanceburg and Olive Hill, Kentucky. *Id.* at ¶ 11. Kentucky Power owns approximately 1,230 miles of transmission facilities and 1060 MW of generating capacity. *Id.* at ¶ 10.

American Electric Power is a multi-state public utility holding company registered under the Public Utility Holding Company Act of 1935. *Id.* at ¶ 3. Including Kentucky Power, the American Electric Power operating companies provide electric service to approximately 5 million customers in eleven states. *Id.* at ¶ 4. The American Electric Power system includes 67 generating stations in the United States and approximately 39,000 miles of transmission facilities spanning its operating companies' eleven state service territory. *Id.* at 5, 7.

In conformity with the requirements of federal law, Public Utility Holding Company Act of 1935, 15 U.S.C. § 79 *et seq.*, the generating and transmission assets of the American Electric Power operating companies are operated as a single, interconnected and coordinated system. *Id.* at ¶ 3. Specifically, the generating assets of the five operating companies in AEP's east transmission pricing zone ("AEP-East"), Kentucky Power, Columbus Southern Power Company, Appalachian Power Company, Ohio Power Company and Indiana Michigan Power Company, are jointly operated and costs shared pursuant to the Interconnection Agreement between the companies. *Id.* at ¶¶ 3, 5-6. The five companies' generation, including that located in Kentucky and owned by Kentucky Power, is centrally dispatched from American Electric Power's facilities in Columbus, Ohio. *Id.* at ¶¶ 3, 5. Similarly, the AEP operating companies' transmission assets are jointly operated and costs shared under the terms of the

2

Interconnection Agreement and a Transmission Agreement. Both the

Transmission Agreement and the Interconnection Agreement are filed with and

subject to the jurisdiction of the FERC. *Id.* at ¶¶ 6, 8.

These joint generation and transmission operations make available to

Kentucky Power's customers the resources and efficiencies of a unified, centrally

dispatched system. *Id.* at ¶¶ 5, 7-8. In fact, the Sixth Circuit Court of Appeals in

*Ohio Power Company v. Federal Energy Regulatory Commission* noted both the

physically integrated and centrally controlled nature of the American Electric

Power system and its resultant benefits:

> "Indiana & Michigan Electric Company, together with the five other
> operating companies, is an integral part of the American Electric
> Power System (AEP), a single, coordinated power system
> operating as an integrated unit in Michigan, Indiana, Ohio,
> Kentucky, West Virginia, Virginia and Tennessee, with generating
> facilities combined by an inter-connected transmission grid. The
> System's dispatching center at Canton, Ohio, directs the dispatch
> and energy on a continuous basis to provide the capacity and
> energy to carry all of the customer demands in the seven-state area
> at maximum economy.
>
> The proof shows that I&M realizes substantial advantages
> from its participation in the integrated operations including savings
> in capital outlay for generating facilities, savings in the cost of
> generating and transmitting energy, better control and maintenance
> of voltage levels and greater reliability of service.
>
> ...
>
> The electric load of every customer of every operating
> company in the System is supplied with electric energy from the
> entire AEP pool."[2]

---

[2] *Ohio Power Company v. Federal Energy Regulatory Commission*, 668 F.2d 880, 882-883 (6th Cir. 1982) quoting, *Indiana & Michigan Electric Company v. Federal Power Commission*, 365 F.2d 180, 181-182 (7th Cir. 1966).

3

Federal law, particularly FERC Order 888, mandates that American Electric Power offer non-discriminatory, open access transmission service across its entire transmission system, including that portion located within Kentucky, without regard to state or operating company boundaries. *Id.* at ¶ 9. Transmission service on the American Electric Power operating companies' transmission system is provided pursuant to a FERC-approved Open Access Transmission Tariff ("OATT"). Under the American Electric Power OATT, transmission service to all customers must be curtailed on a pro-rata basis in the event of an emergency requiring curtailment. *Id.* at ¶ 18.

B.    Electric System Reliability.

The North American electric transmission system consists of highly-interconnected facilities for the transmission of AC current at high voltages throughout the United States and Canada. *Id.* at ¶ 13. The system is divided into three electrically independent areas called "Interconnections." *Id.* Kentucky Power and the other AEP-East operating companies are located within the Eastern Interconnection, which stretches roughly from the Rocky Mountains eastward. *Id.*

Because electricity flows along the path of least resistance, and without regard to political or corporate boundaries or the type of customer receiving the service, it can not be directed along a specific path like water, gas or oil flowing through a pipeline, or switched like calls over a long-distance network. *Id.* at ¶ 14. Thus, electricity generated anywhere within the Eastern Interconnection may flow anywhere within the Interconnection. *Id.*

Because of the highly interconnected nature of North American electric

transmission system and the physics of electricity, a problem in one part of the

Eastern Interconnection, for example, can cause interconnected elements to

become overloaded and fail. *Id*. at ¶ 15. Unless appropriate steps are quickly

taken a "cascading outage" may result producing a failure in a huge area of the

interconnected system that spans multiple state and operating company

boundaries. *Id*. The 1965 Northeast blackout as well as the August 14, 2003

blackout that disrupted electric service across eight states and the province of

Ontario and affected 50 million persons are examples of cascading outages. *Id*.

at ¶ 15.

Following the Northeastern blackout of 1965, North American electric

utilities, including the American Electric Power operating companies, established

the North American Electric Reliability Council ("NERC"), to coordinate the

operation of the electric transmission system across state and operating

company boundaries. *Id*. at ¶ 16. Operating under the overall guidance of the

NERC, regional reliability councils help ensure system reliability by coordinating

the operations of regional reliability council member utilities, by providing for the

exchange of information among members and by requiring compliance by

members with reliability council rules, guidelines and other requirements.[3] *Id*. In

addition, a Reliability Coordinator is appointed for each regional reliability council.

*Id*. The Reliability Coordinator is authorized to direct utilities like the American

Electric Power operating companies to take action to prevent or limit a

---

[3] Kentucky Power and the other eastern-most American Electric Power operating companies are
members of the East Central Area Reliability Council ("ECAR.") *Id*. at ¶ 16.

transmission system emergency. *Id.* at ¶ 17. Among the actions that may be

ordered are Transmission Loading Relief ("TLR") measures that require a utility

such as Kentucky Power to reduce or curtail loading on individual transmission

system elements. *Id.* Such curtailments must be made on a pro rata basis and

without regard to political boundaries or whether the customer being curtailed is a

retail customer. *Id.* at ¶¶ 17-18, 20-21. Failure to comply with TLR measures

may compromise the adequacy of any remedial action and lead to cascading

outages both within and without the Commonwealth. *Id.* at ¶ 21.

C.     KRS 278.214 And Proceedings Before the Public Service
       Commission of Kentucky.

The 2002 regular session of the Kentucky General Assembly enacted

KRS 278.214.[4] Unlike American Electric Power's OATT, FERC Order 888, and

ECAR TLR protocols, the statute requires that in the event of an emergency

necessitating curtailment that Kentucky firm retail customers be curtailed last:

**Curtailment of service by a utility or a generation and
transmission cooperative.** When a utility or generation and
transmission cooperative engaged in the transmission of electricity
experiences on its transmission facilities an emergency or other
event that necessitates a curtailment or interruption of service, the
utility or generation and transmission cooperative shall not curtail or
interrupt retail electric service within its certified territory, or curtail
or interrupt wholesale electric energy furnished to a member
distribution cooperative for retail electric service within the
cooperative's certified territory, except for customers who have
agreed to receive interruptable (*sic*) service, until after service has
been interrupted to all other customers whose interruption may
relieve the emergency or other event.

KRS 278.214; Baker Affidavit at ¶ 20.

---

[4] 2002 Kentucky Acts, Ch. 365, § 12.

6

In response to the enactment of KRS 278.214 and communication from

the Executive Director's office of the Public Service Commission of Kentucky

("Commission"), Kentucky Power on August 30, 2002 filed its revised Kentucky

Capacity and Energy Control Program Tariff. Baker Affidavit at ¶ 23. The tariff

indicated that Kentucky Power would comply with the curtailment priorities under

the statute to the extent they were compatible with federal and reliability council

requirements:

> In implementing any load curtailment, AEP will comply with Section
> 12 of Senate Bill 257 (2002 Session) to the extent possible under
> federal law and regulation and applicable reliability council
> requirements.

*Id.* at ¶ 23. By order dated September 27, 2002, the Commission noted that the

conditional language of the revised tariff appeared to conflict with KRS 278.214,

suspended the tariff and initiated an investigation. *Id.* at ¶ 24.

As part of the Commission's investigation, Kentucky Power filed testimony

and a brief noting that unless construed in a fashion to avoid such conflicts,

KRS 278.214 raised significant issues under the Commerce and Supremacy

clauses of the United States Constitution. By Order entered May 28, 2003 the

Commission rejected the revised tariff as inconsistent with KRS 278.214. *Id.* at

¶ 25. It then directed Kentucky Power to file "'new tariffs setting forth without

qualification the expressed transmission priorities required by KRS 278.214.'" *Id.*

Subsequently, the Commission rejected Kentucky Power's Petition for Rehearing

and this action followed.

## Argument

A.  KRS 278.214 Facially, Purposefully and Practically Discriminates Against Interstate Commerce And Thus Violates The Dormant Commerce Clause.

The transmission of electricity on the AEP transmission system constitutes

interstate commerce.[5]  The interstate nature of electric transmission follows from

the manner in which electricity is transmitted:

> Unlike oil, gas or water flowing through pipelines, electricity can not be directed along a specific path, or switched like calls over a long-distance telephone network.  Instead, it flows along the path of least resistance and without regard to political or corporate boundaries or the type of customer (retail, wholesale or otherwise) receiving the service.[6]

Thus, as noted by the Supreme Court:

> any electricity that enters the grid immediately becomes part of a vast pool of energy that is constantly moving in interstate commerce.... [so] that transmissions on the interconnected national grids constitute transmissions in interstate commerce.[7]

These truisms, which are applicable to transmissions on any part of the national

grid, pertain with particular force to transmissions by a registered public utility

holding company such as American Electric Power, which by law, and in fact, is

operated as a single, integrated utility with centrally-controlled dispatch and

transmission.[8]

---

[5] New York v. F.E.R.C., 535 U.S. 1, 7, 16, 122 S.Ct. 1012, 1018, 1022, 152 L.Ed.2d 47 (2002); Association of Public Agency Customers v. Bonneville Power Administration, 126 F.3d 1158, 1173 (9th Cir. 1997) (recognizing that the "[i]nterstate transmission [of electricity] is clearly a federal matter.")
[6] Baker Affidavit at ¶ 14.
[7] 535 U.S. at 7, 16, 122 S.Ct. at 1018, 1022.
[8] Baker Affidavit at ¶¶ 5, 7.

8

The "Dormant Commerce Clause" prohibits States from enacting laws that burden such interstate commerce.[9] Intended "to avoid the tendencies toward economic Balkanization that plagued relations among the Colonies and later among the States under the Articles of Confederation,"[10] the Dormant Commerce Clause "forbids states from 'advanc[ing] their own commercial interests by curtailing the movement of articles of commerce either into or out of the state."[11] A State violates the Dormant Commerce Clause by discriminating against out-of-state interests; that is, by according "differential treatment of in-state and out of state economic interests that benefits the former and burdens the latter."[12] A discriminatory statute violates the Dormant Commerce Clause except where the State demonstrates the statute "'advances a legitimate local purpose that can not be adequately served by reasonable nondiscriminatory alternatives.'"[13] The burden to make such a showing is on the State.[14] Any rationalization advanced by a State is subject to strict scrutiny, and in the case of facial discrimination, as here, the burden generally is insurmountable.[15]

Unconstitutional discrimination can take three forms: (1) facial; (2) purposeful; or (3) practical.[16] KRS 278.214 embodies each.

---

[9] *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 87, 104 S.Ct. 2237, 2240, 81 L.Ed.2d 71 (1984).
[10] *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93, 98, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994).
[11] *Eastern Kentucky Resources v. Fiscal Court of Magoffin County, Kentucky*, 127 F.3d 532, 540 (6th Cir. 1997).
[12] *Oregon Waste Systems, Inc.*, 511 U.S. at 99, 114 S.Ct. at 1350.
[13] 511 U.S. at 101, 114 S.Ct. at 1351.
[14] *Id.*
[15] *Id.*
[16] *Wyoming v. Oklahoma*, 502 U.S. 437, 454-55, 112 S.Ct. 789, 800-801, 117 L.Ed.2d 1 (1992).

1. Facial Discrimination.

On its face KRS 278.214 seeks to regulate electric transmissions, an article of interstate commerce,[17] and discriminates against such commerce. Its protections are applicable only to retail customers within Kentucky Power's certified territory.[18] By statute Kentucky Power's certified territory is confined to the 20 Eastern Kentucky counties in which it provides service.[19] KRS 278.214 requires that all other retail customers on the integrated AEP system, including those in Ohio, West Virginia, Tennessee, Virginia, Michigan, Indiana and the other AEP states, must be curtailed before transmission to Kentucky retail customers may be limited.[20] Indeed, the statute requires such curtailment even where to do so may threaten the stability of the interstate system.[21]

By reserving the AEP interstate transmission system for Kentucky customers in the case of a transmission emergency, KRS 278.214 is indistinguishable (except to impose a greater burden on interstate commerce) from the statute struck down by the Supreme Court in *Wyoming v. Oklahoma.*[22] At issue there was an Oklahoma statute requiring that electric utilities operating in the state use a blend containing at least ten percent Oklahoma coal in connection with any Wyoming coal burned.[23] Recognizing that the effect of the

---

[17] *New York v. F.E.R.C.*, 535 U.S. 1, 7, 16, 122 S.Ct. 1012, 1018, 1022, 152 L.Ed.2d 47 (2002).
[18] KRS 278.214 ("When a utility or generation engaged in the transmission of electricity experiences on its transmission facilities an emergency or other event that necessitates a curtailment or interruption of service, the utility ... shall not curtail or interrupt retail electric service within its certified territory ... until after service has been interrupted to all other customers whose interruption may relieve the emergency or other event.")
[19] *See*, KRS 278.016, *et seq.*
[20] Baker Affidavit at ¶ 20.
[21] Baker Affidavit at ¶ 21.
[22] 502 U.S. 437, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992).
[23] 502 U.S. at 444, 112 S.Ct. at 794.

10

statute was to "expressly reserve[] a segment of the Oklahoma coal market for Oklahoma-mined coal, to the exclusion of coal mined in other States," the Court held that the statute on its face discriminated against interstate commerce.[24] Here, KRS 278.214 purports to reserve not just a portion, but AEP's entire interstate transmission system, for the benefit of Kentucky Power's retail customer in Kentucky to the exclusion of the other AEP operating company customers.

 2. Purposeful Discrimination.

A State purposefully discriminates against interstate commerce when it seeks to shift to out-of-state interests the burden of limited resources.[25] In *City of Philadelphia*, for example, the Court struck down a New Jersey statute prohibiting the importation of most out of state waste products as a means of conserving landfill space.[26] Holding that the statute violated the Dormant Commerce Clause, the Court explained that "[w]hat is crucial [to the Court's determination the statute violated the Dormant Commerce Clause] is the attempt by one State to isolate itself from a problem common to many by erecting a barrier against the movement of interstate trade."[27] KRS 278.214 creates just such a barrier to the intestate movement of electricity in the event of a transmission emergency by reserving to Kentucky Power's ratepayers the AEP interstate transmission system's resources.

---

[24] 502 U.S. at 455, 112 S.Ct. at 800.
[25] *City of Philadelphia v. New Jersey*, 437 U.S. 617, 628, 98 S.Ct. 2531, 2538, 57 L.Ed.2d 475 (1978); *New England Power Company v. New Hampshire*, 455 U.S. 331, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982).
[26] 437 U.S. at 618-619, 98 S.Ct. at 2532-2533.
[27] 437 U.S. at 628, 98 S.Ct. at 2537-2538.

11

To the same effect is the Court's decision in *New England Power Company v. New Hampshire*.[28] There, the New Hampshire Public Service Commission prohibited New England Power from exporting to other states hydroelectric power produced in its New Hampshire plants on the Connecticut River.[29] Like KRS 278.214, the statute pursuant to which the New Hampshire Commission acted was designed to reserve to in-state residents a resource (hydroelectric power) for the public good.[30] Yet, Chief Justice Burger had no difficulty finding a Dormant Commerce Clause violation where the statute was "designed to gain an economic advantage for New Hampshire citizens at the expense of New England Power's customers in neighboring states."[31] KRS 278.214 likewise sacrifices the interests of retail customers in other states to the protection of Kentucky retail customers and as such "is precisely the sort of protectionist regulation that the Commerce Clause declares off-limits to the states."[32]

     3.    Practical Discrimination.

A statute also contravenes the Dormant Commerce Clause if, without regard to the legislature's intent, the statute "directly controls commerce occurring wholly outside the boundaries of a State...."[33] "[A] statute has an extraterritorial effect when it necessarily requires out-of-state commerce to be

---

[28] 455 U.S. 331, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982).

[29] 455 U.S. at 333-334, 102 S.Ct. at 1098.

[30] 455 U.S. at 335, 102 S.Ct. at 1098.

[31] 455 U.S. at 339, 102 S.Ct. at 1101.

[32] 455 U.S. at 339, 102 S.Ct. at 1100-1101.

[33] *Healy v. Beer Institute*, 491 U.S. 324, 336, 109 S.Ct. 2491, 2499, 105 L.Ed.2d 275 (1989); *National Collegiate Athletic Association v. Miller*, 10 F.3d 633, 639-640 (9th Cir. 1993).

conducted according to in-state terms."[34] Here, KRS 278.214 seeks to impose
Kentucky curtailment priorities on other States by requiring that transmission be
curtailed to all other customers (including those located outside Kentucky) on the
AEP interstate transmission system prior to any curtailment to Kentucky firm
retail customers. This extraterritorial effect is particularly pronounced in the case
of Kentucky Power, which is part of a "regional, physically integrated system of
generating plants, transmission lines and distribution facilities and ... assets [that]
are capable of being operated, and in fact are operated, as a single,
interconnected and coordinated system."[35] Indeed, Kentucky Power's generation
and transmission assets are centrally dispatched and operated from American
Electric Power's facilities in Columbus, Ohio.[36]

In determining whether a statute results in practical discrimination, a court
must also:

> Consider[] how the challenged statute may interact with legitimate
> regulatory regimes of other States and what effect would arise if not
> one, but many or every State adopted similar legislation. Generally
> speaking, the Commerce Clause protects against inconsistent
> legislation arising from the projection of one state regulatory regime
> into the jurisdiction of another State.[37]

Here, if Ohio, Indiana, West Virginia or any of the other states in which the

American Electric Power operating companies provide retail electric service

enacted a statute requiring that those states' retail customers be the last curtailed

in the event of a transmission emergency, the American Electric Power operating

companies would be placed in the position of having to comply with two mutually

---

[34] *Cotto Waxo Company v. Williams*, 46 F.3d 790, 794 (8th Cir. 1995).
[35] Baker Affidavit at ¶ 3.
[36] Baker Affidavit at ¶¶ 5, 7.
[37] *Healy*, 491 U.S. at 336-337, 109 S.Ct. at 2499.

13

exclusive requirements. Retail customers in Ohio and Kentucky, for example,

can not both be the last to be curtailed. Thus, the operating companies would be

required to decide which State's statute to violate. Such a "serious risk of

inconsistent obligations" constitutes a per se violation of the Dormant Commerce

Clause and voids the statute without regard to its claimed local benefit.[38]

NCAA v. Miller is instructive. There, the NCAA challenged a Nevada

statute prescribing certain procedural protections in any rules infractions

proceedings against a Nevada school by a national collegiate athletic

association.[39] Because the "NCAA must have uniform enforcement procedures

in order to accomplish its fundamental goals," the Ninth Circuit held that the risk

of inconsistent obligations being imposed by other States rendered the Nevada

statute a per se violation of the Dormant Commerce Clause.[40] Here, the need for

a single set of rules is even more compelling. As Mr. Baker explained, the

reliability of the interstate power grid depends upon the Reliability Coordinator

and the system operator being able to take the necessary steps to avoid a

cascading outage:

> Because the AEP system is operated on an integrated basis, it may
> be necessary in a given instance, and contrary to KRS 278.214, to
> curtail service to non-interruptible retail customers located in
> Kentucky prior to curtailing service to other customers, including
> those located in other states. If Kentucky retail customers were to
> be exempted, the adequacy of the curtailment action might be
> compromised. This could, in turn, lead to a cascading outage
> affecting service to customers both within and without the
> Commonwealth. **The Reliability Coordinator must have the**
> **discretion to direct, and the system operator must have the**
> **discretion to take, corrective action without regard to political**

---

[38] NCAA v. Miller, 10 F.3d at 640.

[39] Id. at 637.

[40] Id. at 639-640.

14

> *or corporate boundaries that have no meaning from an electrical standpoint.*[41]

KRS 278.214 ignores these realities and practically discriminates against interstate commerce. As such, it is void and must be stricken.

> B.  Because It Conflicts With Both FERC Order 888 and American Electric Power's FERC Pro-Forma OATT, KRS 278.214 Is Preempted Under the Supremacy Clause of the United States Constitution.

To avoid repetitious argument, Kentucky Power adopts pages 14-30 of the November 7, 2003 Memorandum of Plaintiffs' Louisville Gas and Electric Company and Kentucky Utilities Company in support of their motion for summary judgment [Docket Entry 31].

Like the MISO tariff relied upon by Louisville Gas and Electric Company and Kentucky Utilities Company, any curtailment of transmission under American Electric Power's FERC-filed OATT[42] must be on a pro-rata basis. As such, the statutory requirement that Kentucky retail customers be the last curtailed in the event of a transmission emergency is contrary[43] to American Electric Power's OATT and FERC Order 888 and succeeding orders.[44]

KRS 278.214 and the Kentucky Commission's Orders directing Kentucky Power to file a tariff "setting forth without qualification the expressed transmission priorities required by KRS 278.214'" are preempted by the contrary federal law.

---

[41] Baker Affidavit at ¶ 21 (emphasis supplied.)

[42] Baker Affidavit at Exhibit 2.

[43] Baker Affidavit at ¶ 20.

[44] Order 888, 75 FERC 61,080 (April 24, 1996); Order 888-A, 78 FERC 61,220 (March 4, 1997); Order 888-B, 75 FERC 61, 248 (November 25, 1997); Order 888-C, 82 FERC 61,046 (January 20, 1998). These Orders may be found in their entirety at: http://www.ferc.gov/legal/ferc-regs/land-docs/order888.asp

## Conclusion

There being no genuine issue of material fact and Kentucky Power

Company being entitled to judgment as a matter of law, KRS 278.214 and the

Commission Order implementing it are void under the Commerce and

Supremacy Clauses of the Constitution of the United States.

Respectfully submitted,

Mark R. Overstreet
STITES & HARBISON PLLC
421 West Main Street
P.O. Box 634
Frankfort, Kentucky 40602-0634
Telephone: 502-223-3477

-and-

Kevin F. Duffy
American Electric Power Service
Corporation
1 Riverside Plaza
Post Office Box 16631
Columbus, OH 43216
Telephone: (614) 716-1617

COUNSEL FOR PLAINTIFF:
KENTUCKY POWER COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by first class mail, postage prepaid, on this the 10th day of September, 2004 upon:

Elizabeth E. Blackford
Dennis Howard, II
Assistant Attorney General
Office of Rate Intervention
1024 Capital Center Drive
Frankfort, Kentucky 40601

David F. Boehm
Boehm, Kurtz & Lowry
2110 CBLD Center
36 East Seventh Street
Cincinnati, OH 45202

Richard G. Raff
Public Service Commission of Kentucky
211 Sower Boulevard
P.O. Box 615
Frankfort, Kentucky 40602-0615

Sheryl G. Snyder
David S. Kaplan
Frost Brown Todd LLC
3200 Aegon Center
400 West Market Street
Louisville, Kentucky 40202-3363

Mark R. Overstreet

KE057:KE160:11398:1:FRANKFORT